**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WEIHARIK GARCIA,** individually and on behalf of all others similarly situated, | Case No.<br>24-5962 |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **POPMENU, INC.**<br>**AND**<br>**METROPOLITAN HOSPITALITY, INC.** | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Weiharik Garcia ("Plaintiff" or "Ms. Garcia") brings this Class Action Complaint and Demand for Jury Trial against Defendant Popmenu, Inc. and Metropolitan Hospitality, Inc. and alleges as follows:

1.     Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Popmenu and Metropolitan violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4.      Plaintiff Weiharik Garcia is an individual residing in the Eastern District of Pennsylvania.

5.      Defendant Popmenu, Inc. is a Delaware corporation which is registered to do business in Pennsylvania, with its registered agent office address in Erie.

6.      Defendant Metropolitan Hospitality, Inc. is a Pennsylvania corporation which owns the Metropolitan American Diner & Bar in North Wales.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

8.      This Court has general personal jurisdiction over Defendants either because they are headquartered and have their principal place of business in Pennsylvania or because they have consented to the exercise of general personal jurisdiction by registering to do business here.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Metropolitan resides in this District and all Defendants are residents of Pennsylvania.

## BACKGROUND

**A.      The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.      A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## <u>FACTUAL ALLEGATIONS</u>

14.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.     At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated text messages at issue.

16.     Plaintiff's telephone number, (484) XXX-XXXX, is a residential, non-commercial telephone number.

17.     Ms. Garcia uses the number for personal, residential, and household reasons.

18.     Ms. Garcia does not use the number for business reasons or business use.

19.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.     Plaintiff's telephone number has been listed on the National Do Not Call Registry since she listed it there more than 31 days prior to the text messages at issue.

21.     Plaintiff has never been a customer of Popmenu or Metropolitan and never consented to receive calls or text messages from Popmenu or Metropolitan.

22.     Despite that fact, on at least September 12, 2024 and October 10, 2024, the Plaintiff received at least two text messages from the Defendants from the caller ID 877-535-6756.

23.     Upon information and belief, this telephone number is owned by Defendant Popmenu.

24.     The messages were sent to solicit the Plaintiff to purchase various menu items at Metropolitan's restaurant, as reflected by the below screenshot:

4



25.     The link in each text message is owned by Defendant Popmenu.

26.     Each link eventually redirects the individual to Defendant Metropolitan's website.

27.     All the calls and text messages were sent to attempt to sell the Plaintiff Defendant Metropolitan's restaurant and items on the menu there.

28.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

29.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

30.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

31.     The FCC has instructed that sellers such as Metropolitan may not avoid liability by outsourcing telemarketing to third parties, such as Popmenu:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

32.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

33.     Metropolitan is liable for telemarketing calls placed by Popmenu and transferred or sold to Metropolitan and its agents to generate customers for Metropolitan and its agents, including the Plaintiff.

34.     Indeed, Metropolitan's relationship with Defendant Popmenu contains numerous hallmarks of agency.

35.     For example, the text messages advertise Metropolitan's goods and services, and eventually direct those who click on the links to Metropolitan's website, but the telephone number and links are Popmenu links.

36.     Metropolitan could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by refraining from using lead generators and text message marketing services like Popmenu, but it did not.

37.     Metropolitan was interested in selling its products and services via text message marketing, so it turned to text message marketers like Popmenu that could sent text messages *en masse* to advertise its goods and services.

38.     To do so, Metropolitan hired Popmenu to orchestrate an *en masse* text message telemarketing campaign.

39.     Metropolitan controlled the day-to-day activities of Popmenu by providing the specific criteria and demographics of individuals it desired to target and required Popmenu to adhere to those criteria.

40.     Defendants continued to market to Plaintiff, despite Plaintiff's telephone number being on the National Do Not Call Registry.

41.     As such, Metropolitan controlled the content of Popmenu's telemarketing.

42.     Finally, Metropolitan could have terminated Popmenu.

43.     It did not.

44.     By virtue of hiring Popmenu to conduct a text message marketing campaign showcasing its drafted ads and featured menu items, including selecting such items, and directing

the conduct and other indicia of the calls at issue described above, Metropolitan directed

Popmenu and the content of the communications that Popmenu would use in its marketing.

45.     A reasonable seller like Metropolitan whose telemarketers and agents are sending

messages would investigate into the reasons why their vendors are sending messages to numbers

on the Do Not Call Registry that never visited their establishment as an initial matter.

46.     Indeed, Metropolitan could have investigated if the customers or web link clicks it

received were genuine or if they were on the National Do Not Call Registry.

47.     It did not.

48.     Metropolitan hired Popmenu without a proper investigation and did not terminate

them.

49.     As such, they knowingly ratified Popmenu's conduct.

50.     The 2013 FCC ruling holds that called parties may obtain "evidence of these

kinds of relationships . . . through discovery, if they are not independently privy to such

information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances

pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon

the seller the burden of demonstrating that a reasonable consumer would not sensibly assume

that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

51.     The calls were unwanted.

52.     The calls were nonconsensual encounters.

53.     Plaintiff's privacy has been repeatedly violated by the above-described

telemarketing calls.

54.     Plaintiff never provided her consent or requested the calls.

55.     Plaintiff and the Class have been harmed by the acts of Defendants because their

privacy has been violated and they were annoyed and harassed. In addition, the calls occupied

their telephone lines, storage space, battery life, and bandwidth, rendering them unavailable for

legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if

fully stated herein.

57.     Plaintiff brings this action on behalf of herself and the following class (the

"Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone
> numbers were on the National Do Not Call Registry for at least 31 days, (2) but
> who received more than one telemarketing call from or on behalf of Defendants
> encouraging the purchase of Metropolitan's goods or services, (3) within a 12-
> month period (4) at any time in the period that begins four years before the date of
> filing this Complaint to trial.

**58.     Numerosity**: The exact number of Class members is unknown but based on the *en*

*masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and

individual joinder in this case is impracticable. Class members can be easily identified through

Defendants' records, or those of their agents.

59.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in

that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing

calls and Class members sustained similar injuries and damages as a result of Defendants' uniform

illegal conduct.

60.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of

the Class and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with,

or are antagonistic to those of, the Class, and Defendants have no defenses unique to Plaintiff.

61.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a.      whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

c.      the corresponding degree of liability as between Defendants, and;

d.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

62.     **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members, such that joinder of all members is impracticable.

63.     In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.      Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d.      Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

<u>COUNT I</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

64.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

65.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

66.     Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

67.     These violations were willful or knowing.

68.     As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

69.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully request that the Court enter judgment against Defendants for:

A.     Certification of the National DNC Class as alleged herein;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned as counsel for the Class;

D.     Damages to Plaintiff and members of the National DNC Class pursuant to 47 U.S.C. § 227(c)(5);

E.     Injunctive relief for the Class, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry;

F.     Attorneys' fees and costs, as permitted by law; and

G.     Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 7th day of November, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*